UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
------------------------------:
                              :
IN THE MATTER OF THE SEARCH OF :
    2122 21st Road North       :
    Arlington, Virginia        :
                              :   Case No. 1:12-sw-1002
 and                          :              1:12-sw-1003
                              :
IN THE MATTER OF THE SEARCH OF :
    University of Management   :
    and Technology             :
                              :
------------------------------:
```

MOTIONS HEARING

May 8, 2017

Before:   John F. Anderson, Mag. Judge

APPEARANCES:

James P. Gillis, Counsel for the United States

John C. Kiyonaga, Counsel for the Movant

1          NOTE:  The case is called to be heard at 10:02 a.m.

2     as follows:

3          THE CLERK:  In reference to the search warrant

4     12-sw-1002 and 12-sw-1003.

5          MR. GILLIS:  Good morning, Your Honor.  Jim Gillis

6     for the United States.

7          THE COURT:  Thank you.

8          MR. KIYONAGA:  Good morning, Your Honor.  John

9     Kiyonaga for Dr. Chen.

10          With me at counsel table is Marcus Massey, he is a

11     member of this court, he has been assisting with the case.

12          In the gallery is Fred Sinclair, also a member of the

13     court who has been assisting in the case.  And abeam of him is

14     John Davidson Frame, the husband of Dr. Chen.

15          Your Honor, I wanted as a preliminary matter to ask

16     the Court to unseal the entirety of its file.  The practical

17     effect of the unsealing on the 25th of last month was that it

18     left available to the public the search warrant application and

19     affidavit, which of course is deprived of context, context

20     which is provided by our -- by my pleadings, Dr. Chen's

21     pleadings.  And at this point, I don't think there is any --

22     any reason for a continuing seal.

23          I filed under seal because I've been advised by the

24     Clerk's Office that the matter in its entirety was being

25     treated as under seal, so I didn't want to transgress the

1  dictates of the court.  But at this point, I don't -- I don't

2  see a need for it.  I don't believe anybody is asking for it.

3          So I would ask the Court to consider all the

4  pleadings to be under seal at this point.

5          THE COURT:  That was the -- that was the first thing

6  I had on my list, was the sealing issue.  Because I -- I mean,

7  I wanted to be cautious about this because when things first

8  came up, I wanted to make sure -- I saw that your motion was

9  filed under seal, and I wanted to keep things as sealed as much

10  as could be necessary.

11          I take it the Government doesn't have any opposition

12  to this being unsealed, does it?

13          MR. GILLIS:  No, Your Honor, we do not.

14          THE COURT:  Okay.  All right.  Well, I'm going to go

15  ahead and have the Clerk's Office unseal the entire file, which

16  will include --

17          MR. KIYONAGA:  Thank you, sir.  I just --

18          THE COURT:  -- the application, affidavits, the

19  motions, the oppositions, your responses you filed on Friday of

20  last week as well.

21          MR. KIYONAGA:  And I would assume prospectively as

22  well, Your Honor.

23          THE COURT:  Okay, yes.

24          MR. KIYONAGA:  Your Honor, just to be clear, I'm not

25  conceding that the matter should not have been treated as under

1   seal prior to the 25th of last month when you entered your

2   order.

3          THE COURT:  Well, I mean, I've looked at the files.

4   And in my view -- and whether the Clerk's Office or the U.S.

5   Attorney's Office agreed with this or not, when I signed the

6   order to seal, it limited the sealing of the file until

7   March 4, 2013.  At that point there was no court order that

8   allowed those proceedings to remain under seal.

9          So my order was limited.  It didn't say, until

10  further order of the court, or a time that the Court may

11  specify, or that anyone had to come in and make an application.

12         But, I mean, my order was pretty specific, and I

13  generally try and do that because, obviously, anything to be

14  filed under court -- under seal with the court, there has to be

15  a reason for it.  And I generally like to put in a timetable.

16         And if the Government needs to have an extension,

17  they can come in an ask for an extension.

18         But, you know, my view of this issue, that as of

19  March 4, 2014 -- 2013, those matters could have been or should

20  have been removed from the sealed portion of the court's files.

21  So, you know, that's my view of it.

22         But given what we're doing today of unsealing the

23  matter, then that doesn't really have that much of a

24  significance.

25         MR. KIYONAGA:  Your Honor, I don't take issue with

1   anything the Court has said, Your Honor.  I guess my position

2   would be that the disclosure by Fox News in the first newscast,

3   which was prior --

4           THE COURT:  The February 24, 2017; is that right?

5           MR. KIYONAGA:  Correct, Your Honor, prior, prior to

6   your order unsealing or noting that it was unsealed.  It would

7   still function as a contempt because the Clerk's Office was

8   treating it as sealed.  The status was unclear because we had

9   the two orders --

10          THE COURT:  Let me just take one thing before we get

11  to that.  Because you filed two motions.

12          MR. KIYONAGA:  Correct, sir.

13          THE COURT:  And I want to make sure that the motion

14  for the return of property has gotten resolved; is that

15  correct?

16          MR. KIYONAGA:  It has been resolved, Your Honor.  The

17  property has been returned in its entirety.  The Government has

18  asked that the motion be treated as moot.

19          I would propound to the Court that it ought to be

20  treated as conceded.  The Government returned all the property

21  and it's now in Dr. Chen's possession anew.

22          THE COURT:  All right.  So that's -- we'll go ahead

23  and don't need to deal with that motion any further.

24          So let's go back to the motion that you've now filed

25  that for some reason -- and I take it, given the unsealing of

1    the record, there is no reason for this transcript of this

2    proceeding to be under seal, is that -- do you agree with that?

3              MR. KIYONAGA:  I would submit there is not, sir.

4              THE COURT:  The same with the Government on that?

5              MR. GILLIS:  I agree, Your Honor.

6              THE COURT:  Okay, all right.  All right.  So go ahead

7    and let me hear your argument on your second motion that you

8    filed.

9              MR. KIYONAGA:  Well, Your Honor, you know, I don't

10   think I've uttered this term since law school, I didn't think I

11   would say it again, but this is clearly an issue of res ipsa --

12   res ipsa loquitur, it speaks for itself.  The only way Fox News

13   could have come into the possession of the information and the

14   documentation specifically that appeared in its news was

15   through a law enforcement or at least an official source.

16             THE COURT:  Well, how about Rhoads?  I mean, it

17   sounds like a lot of this information came through Rhoads.

18             MR. KIYONAGA:  That's correct, Your Honor, but there

19   is a specificity there that I think exceeds anything that

20   Rhoads would have been -- would have been aware of.  The

21   immigration records -- there are passages from within the news

22   items that appear to be lifted verbatim or very close to

23   verbatim from the search warrant affidavit.

24             And I think it's a leap to assume that Mr. Rhoads was

25   privy to everything the Government was doing in terms of this

1  investigation.  He clearly spoke, he clearly has strong

2  feelings on the issue, but I don't think there's any reason the

3  Court should assume that everything within those two reports

4  could be cabined within Mr. Rhoads' personal knowledge.  The

5  breadth of information is far greater than that.

6           Plus, we have photos that came out of Dr. Chen's

7  house.  Pictures of her as a young woman in Chinese uniform.

8  Pictures of family members.  Pictures of her father.  Pictures

9  of her father's grave.  All of those were private property that

10  were seized from her house.

11           So we have a number of different transgressions

12  afoot.  Regardless of how the Court resolves the matter of the

13  seal as of the moment of the first article, the first newscast,

14  you have clearly a nonchalance to disregard the Court's

15  authority in terms of a seal.

16           You have the fruit of a search being broadcast out to

17  the public as a consequence of being disclosed to Fox News.

18  Your Honor ordered --

19           THE COURT:  Well, that only comes into play if it was

20  a proceeding before the grand jury, right?

21           MR. KIYONAGA:  Your Honor, with respect, I would

22  disagree.

23           THE COURT:  Okay.  Help me understand that.  And I

24  went back before and read again this morning Judge Ellis'

25  decision in the Rosen case.

1          MR. KIYONAGA:  I don't believe <u>Rosen</u> controls in this

2    case, Your Honor.  <u>Rosen</u>, first of all, was a highly publicized

3    matter.  And Judge Ellis --

4          THE COURT:  You just submitted something about how

5    significant this Fox News article was.

6          MR. KIYONAGA:  And it's without question significant.

7    But the publicity in <u>Rosen</u> exceeded the news item that was at

8    play in that case.  But Judge Ellis specifically found that the

9    news item lacked the specificity to qualify as a 6(e)

10   violation.

11         These items, these news items were very, very

12   specific, drew directly from the affidavit of search and

13   comprised private property of a very personal nature, seized by

14   consequence of the Court's authorized search and basically

15   converted.

16         The Government has no right to take private property

17   and dispose of it as it sees fit.  These things belong to Ms.

18   Chen.  So we have Privacy Act.  We have contempt of the Court

19   by virtue of the seal or something approaching it.  I don't

20   know whether we have 6(e), Your Honor, because the Government

21   hasn't seen fit to tell us whether a grand jury was ever

22   impaneled.

23         THE COURT:  Well, that was what your motion was all

24   about, your second motion.

25         MR. KIYONAGA:  Your Honor, it was about more.

1          THE COURT:  Having to do with a violation --

2          MR. KIYONAGA:  It certainly comprised 6(e), but it's

3   Privacy Act, it's seal, it's 6(e), it's conversion of private

4   property.  Take your pick, Your Honor.  But the Government is

5   not supposed to be taking the fruits of the search because

6   somebody within the Government has a personal animus towards

7   the subject of the search and disclosing it to the media.

8          THE COURT:  Well, show me where in your initial

9   motion you raise the issue of a Privacy Act violation.

10          MR. KIYONAGA:  Your Honor, I didn't raise that until

11   a later motion.  But the fact of the matter is, it's an issue

12   that should probably be considered by the Court because it

13   clearly offends the Privacy Act.

14          THE COURT:  Well --

15          MR. KIYONAGA:  There is also --

16          THE COURT:  -- you're talking about you didn't raise

17   it until Friday at 4 o'clock?

18          MR. KIYONAGA:  I may have raised it in my reply, Your

19   Honor.  But if I raised it Friday at 4 o'clock, I raised it

20   Friday at 4 o'clock.  It's still an issue properly before the

21   Court.

22          The threshold issue, Your Honor, is what sort of

23   restrictions attach to property that is seized pursuant to a

24   Court ordered search warrant.  The Court has the authority to

25   return it because that's what 41(e) is all about.

1          THE COURT:  Right.

2          MR. KIYONAGA:  (g).  So presumably the Court is the

3   ultimate custodian in legal terms of that property.  I'm

4   assuming the Court didn't authorize disclosure to Fox News.

5          The Court stands to protect the privacy interests of

6   Dr. Chen and other people that are suffering searches, to make

7   sure that there is a good reason for it.  And the corollary of

8   that is to make sure that the whole, the entire search process,

9   to include the keeping of the fruits of the search, is handled

10  legitimately, properly, responsibly.  This is the anthesis of

11  that.

12         So it flaunts -- it flouts the Court's authority in

13  authorizing the search.  It violates privacy.  It may violate

14  6(e).  It's impossible for us to say, Your Honor, we have no

15  idea whether a grand jury was actually impaneled.

16         Mr. Rhoads certainly indicated to the -- to Dr. Chen

17  that one had been impaneled and that he was scheduled to appear

18  before it.  And Fox News clearly repeated that allegation.

19         So I think the balance of evidence before the Court

20  at this point is that in fact a grand jury was impaneled.

21  That's the only -- the only indicator we have one way or

22  another is Mr. Rhoads, who definitely said that it was.

23         So we're laboring at a disadvantage because the

24  Government, frankly, is being extremely coy on this point.  It

25  could have said --

1          THE COURT:  Well, the Government didn't disclose that

2    Rhoads was testifying in front of the grand jury.  Rhoads

3    testified -- Rhoads disclosed that he was scheduled to testify

4    in front of the grand jury, right?

5          MR. KIYONAGA:  Correct, Your Honor.

6          THE COURT:  Okay.  So how is it that the Government

7    is responsible, arguably, for what Rhoads told Dr. Chen?

8          MR. KIYONAGA:  Your Honor, I'm not saying the

9    Government is responsible for what Mr. Rhoads says.  What I'm

10   saying is that the only logical inference that the Court can

11   draw from those news reports is that somebody within the

12   Government shared with Fox News information beyond what was in

13   the personal knowledge of Mr. Rhoads.

14         This was filed, excuse me, as a 6(e) motion because

15   the only evidence in the record that Ms. Chen -- Dr. Chen is

16   aware of indicates that a grand jury was impaneled.

17         The Government hasn't deigned to say.  It's reply

18   talks about the fact that no Government official was quoted on

19   the issue.  That's irrelevant.  It would have been easy for the

20   Government to say, no, we never impaneled a grand jury.  Yet

21   that assertion is nowhere to be found in its reply.

22         So one of the things I'm asking the Court is to ask

23   the Government exactly what happened.

24         THE COURT:  That's making them disclose whether there

25   was or wasn't a grand jury proceeding.  Which is something that

1  you then would say they shouldn't have done, right?

2            MR. KIYONAGA:  Your Honor --

3            THE COURT:  You know --

4            MR. KIYONAGA:  I can't -- Dr. Chen can't prove a

5  negative.  The only evidence that the Court has before it at

6  this juncture, that I'm aware of, indicates that a grand jury

7  was impaneled.  The only mention of it in the two Fox News

8  articles is Mr. Rhoads saying that he had been -- he had been

9  summoned to testify.  I would submit to the Court --

10            THE COURT:  That he had been told to tell Dr. Chen

11  that he had been summoned to testify.

12            MR. KIYONAGA:  Very well, Your Honor.  He had been

13  told to tell her.  But the fact of the matter is, the only

14  indicator we have is that the impanelment of a grand jury is

15  more likely than not.  Other than that, we have silence on the

16  issue.

17            I mean, grand juries are certainly a routine function

18  of felony investigations, so I don't think it's beyond the pale

19  to surmise that one was in fact impaneled.

20            But I think it's -- it's unfair and it's

21  self-defeating to tell a movant that there is no relief to be

22  had because it's secret, it's within the sole discretion of the

23  Government to reveal it.  It's a process that happens under the

24  auspices of this Court.  And the Court has authority over grand

25  jury proceedings.  And it's certainly within the Court's

1  discretion to require an answer from the Government.

2  If the Court wants to seal that answer, we are

3  certainly happy to live with the seal, but we're dancing around

4  the head of a pin here arguing about what may or may not have

5  happened.  I would submit that the evidence is that it happened

6  because that's the only evidence in the record, indicates that

7  it's more likely than not.

8  THE COURT:  Well --

9  MR. KIYONAGA:  But the Government can put an end to

10 speculation with one or two words.

11 THE COURT:  Well, help me understand.  Any of the

12 information that you claim that Fox News may have gotten from

13 an official, Government official, that includes the details

14 about the grand jury's likely course of conduct in the near

15 future or details about the grand jury's inner workings or

16 proceedings.

17 MR. KIYONAGA:  Well, as a starter, Your Honor, we

18 have Mr. Rhoads' identity.  I understand he is not a Government

19 official, although I think the Court could treat him as one.

20 He's clearly a Government agent.  He indicated that he was

21 working for the FBI.  So when Mr. Rhoads speaks, the FBI is

22 speaking.

23 And his identity as a grand jury witness is not

24 supposed to be disclosed.  But if you look at my pleading of

25 last Friday --

1      THE COURT:  Well, let me -- before we go beyond that,

2  if someone gets a subpoena to testify before the grand jury,

3  what restrictions does that individual have on disclosing that

4  they are to -- that they have received a subpoena to testify in

5  front of the grand jury?

6      MR. KIYONAGA:  Your Honor, generally speaking, none

7  that I'm aware of.  But if that person is an undercover agent

8  of the FBI, working in close concert with the FBI, he or she

9  becomes a Government agent, becomes part of the Government

10  entity and shares its responsibilities.

11      I mean, he may or may not have been told what his

12  responsibilities were, but he is the responsibility of the FBI.

13  They recruited him or they somehow -- he somehow or another

14  came into their employ and he worked very hard, it would

15  appear, to try to assist them in investigating this matter.  So

16  if he discloses, the Government disclosed.  And he clearly did

17  disclose.

18      THE COURT:  Okay.  All right, I'm sorry, I

19  interrupted you.  You were going to --

20      MR. KIYONAGA:  Your Honor, I would -- I think you can

21  take your pick of bases or causes on Dr. Chen's part.  6(e) is

22  certainly a claim.  Whether or not it actually has substance is

23  going to depend on knowing whether or not a grand jury was

24  impaneled.

25      But if the Court had the decide at this instant

1  whether or not that's the case, I would submit you have the

2  evidence before you, the preponderance of which indicates that

3  it did.

4       It's a Privacy Act violation.  It's a contempt of

5  Court.  And it's a conversion of personal property.  And there

6  is no question but that that report included personal, very

7  private property, both reports included personal, very private

8  property of Dr. Chen.  That's not what's supposed to happen

9  with the fruits of a search.

10      I would doubt that Mr. Rhoads had custody of those

11 photos.  But if he did, he should be treated as a Government

12 agent by virtue of what he said and by virtue of what was in

13 his possession.

14      So this is a circumstance that speaks for itself.

15 Somebody within the Government disclosed illegitimately

16 information to the media that violates either 6(e), the Privacy

17 Act, your authority to authorize a search, and the Government's

18 seal or apparent -- file seal or apparent seal, and the privacy

19 property rights of Dr. Chen.  And it's incumbent on this point

20 for the Government to offer an explanation that enables the

21 Court to conclude that it's not impossible -- that it's not

22 responsible for the breach.

23      But at this point, I think the only conclusion that

24 the Government -- that the Court can reasonably draw is that it

25 is.

1           THE COURT:  Okay.  Thank you.  I will hear from Mr.

2     Gillis.

3           MR. GILLIS:  Your Honor, I don't believe that

4     anything Mr. Kiyonaga has said isn't already addressed in our

5     pleadings.  And unless the Court has questions, we'll stand on

6     those.

7           THE COURT:  Well, there certainly -- the Privacy Act

8     issue is a new one, at least.  And I don't think that was

9     addressed at all in your pleadings.

10          MR. GILLIS:  Well, true enough, Your Honor.  I was

11    notified of the filing of that pleading at 4:35 on Friday

12    afternoon.  And because a friend from out of town that I hadn't

13    seen in a long time had been in town, I didn't have a chance to

14    review it then.  And I had a -- I looked at it this morning.

15    The citation in the -- in the pleading is entirely wrong.  It

16    took me about five or so minutes to find it in the first place.

17    And then I found it to be not terribly enlightening.

18          I don't believe Mr. Kiyonaga has pointed to the

19    aspect of it -- it relies upon the statute.  I saw nothing in

20    the section quoted that indicated that -- that in general there

21    is some right to privacy with respect to information.

22          I suspect, if I had more time to look into it, Your

23    Honor, that it would refer to personal identifying information,

24    such as Social Security numbers and dates of birth and the

25    like.  But frankly, Your Honor, I do not know.  I have had -- I

1   have not had enough time to research it.

2          As the Court pointed out, this started off as a 6(e)

3   motion.  I don't know if that is being abandoned at this point

4   or --

5          THE COURT:  No, I mean, he has argued the 6(e) issue.

6          MR. GILLIS:  Yes, I can address that, Your Honor,

7   although I think that's well covered --

8          THE COURT:  Well, let's -- the photographs, help me

9   understand the photographs.

10          MR. GILLIS:  Your Honor --

11          THE COURT:  Were those two paragraphs part of what

12   was seized pursuant to the search warrant?

13          MR. GILLIS:  Excuse me, Your Honor.  They were, Your

14   Honor.  At least I saw those photographs and I was informed

15   that they came from the search take.  Whether there were other

16   sources of those photographs that could have been given to Fox

17   News, I have no idea.

18          But taking that for granted, Your Honor, this still

19   does not provide a prima facie case.  Judge Ellis' opinion

20   makes that abundantly clear.  As does the opinion from the D.C.

21   Circuit that is in circumstances much more egregious than these

22   are alleged to be.  In that case, Your Honor, if I may refer to

23   it, that's In re Sealed Case, 192 F.3d 995.  There, Your Honor,

24   the newspaper quoted from sources inside the Independent

25   Counsel's Office.  The Independent Counsel conceded that point.

1    After initially denying it, they later referred the matter for

2    a perjury investigation against the person who had submitted

3    the declaration.

4         But in any case, that quote, which you'll find under

5    section -- under section 1 of the statement of facts in the

6    first paragraph indicates that basically there were two grand

7    jury matters that were revealed by that -- by that quotation.

8    One concerning this group of prosecutors asking that Mr. Starr

9    ask the grand jury to return an indictment.

10         And the second one having to do with alleged lies by

11   President Clinton in his deposition and in his grand jury

12   testimony in August.

13         So you have there reference to testimony by Mr.

14   Clinton before one grand jury and then the Independent Counsel

15   group asking that Mr. Starr ask another grand jury to return an

16   indictment.  And even under those facts, Your Honor, the D.C.

17   Circuit said that that was not sufficient to raise a prima

18   facie case of a violation such that a hearing need be held.

19         And under section 4 of that opinion, Your Honor, the

20   Court, the D.C. Court of Appeals says:  A prima facie violation

21   based on a news report is established by showing that the

22   report discloses matters occurring before the grand jury and

23   indicates that sources of the information include Government

24   attorneys.

25         It goes on to say that because that second point had

1   been conceded, the only issue remaining is whether the

2   disclosures qualify as matters occurring before the grand jury.

3           And it goes on to say in that same, in that same

4   section, Your Honor, in the third paragraph, about midway

5   through:  We have never read Rule 6(e) to require that a veil

6   of secrecy be drawn over all matters occurring in the world

7   that happen to be investigating -- investigated by a grand

8   jury.  Indeed, we have said that the disclosure of information

9   coincidentally before the grand jury, which can be revealed in

10  such a manner that its revelation would not include the inner

11  workers of the grand jury, is not prohibited.

12          As Mr. Kiyonaga has just conceded, the only mention

13  of grand jury is Mr. Rhoads' statement.  Rule 6(e) explicitly

14  states that no obligation of secrecy could be imposed upon Mr.

15  Rhoads.  And, therefore, that could --

16          THE COURT:  Well, this is a little bit different in

17  that if in fact what is stated is true, was that a Government

18  investigative person told Mr. Rhoads to tell Dr. Chen he was

19  going to testify in front of the grand jury so that her

20  response to that request could be determined.  Is that --

21  factually, that's what --

22          MR. GILLIS:  That's what the article states, Your

23  Honor.

24          THE COURT:  -- states.

25          MR. GILLIS:  Yes.

1          THE COURT:  Isn't that what the affidavit in support

2  of the search warrant states?

3          MR. GILLIS:  I believe so, Your Honor, yes.

4          THE COURT:  So a Government agent has sworn to a

5  judicial officer that that is in fact what happened?

6          MR. GILLIS:  Yes, Your Honor.

7          THE COURT:  Okay.  So we have a Government

8  investigative person --

9          MR. GILLIS:  Yes.

10          THE COURT:  -- telling someone to disclose that he is

11  going to be testifying in front of a grand jury.

12          MR. GILLIS:  That's correct, Your Honor.  That does

13  not make Mr. Rhoads an agent of the Government.

14          But in any case, even that could not be Rule 6(e)

15  material, Your Honor, because that affidavit was sealed by the

16  Court only until a specific date, after which it was to become

17  disclosed.  It was to become unsealed.  And the Court has now

18  unsealed it.  So those facts could not be Rule 6(e) material.

19          THE COURT:  Well, help me just understand and -- Rule

20  6(e) doesn't have a time limit on it, does it?

21          MR. GILLIS:  No, Your Honor, it does not.

22          THE COURT:  Okay.  So at any point in time the

23  Government is not supposed to disclose the inner workings of a

24  grand jury proceeding.

25          MR. GILLIS:  Absolutely, Your Honor.

1    THE COURT:  And I assume that also means that they

2  are not to instruct others to disclose the inner workings of a

3  grand jury proceeding?

4    MR. GILLIS:  That -- yes, Your Honor, that's true.

5    THE COURT:  Okay.  So if in fact a Government

6  employee or investigative personnel, the Government instructed

7  someone to disclose things that the Government itself shouldn't

8  be disclosing, why isn't that a little bit of a problem?

9    MR. GILLIS:  Well, Your Honor, even that does not

10  reveal what occurred, if anything, before the grand jury.  What

11  that says is that -- it says that the Government -- the agent

12  instructed Rhoads to tell Ms. Chen that he had been subpoenaed

13  to the grand jury.  Assuming that is -- that is what appears in

14  the affidavit, so that is true, Your Honor.

15    But that does not reveal a single thing about what

16  was occurring before the grand jury.  It says nothing about

17  what crimes were allegedly being investigated.  It says nothing

18  about whether in fact he had been subpoenaed before the grand

19  jury.  It says nothing about what he may have testified about

20  before the grand jury if he had been called.  It does not say

21  whether he was called before the grand jury.  It does not

22  disclose any matters occurring before the grand jury.

23    Any more than-- in fact, the instances in Judge

24  Ellis' opinion and those taking place in the D.C. In re Sealed

25  Case are significantly more revealing of what may have been

1  taking place before an existing grand jury than anything that

2  Rhoads was instructed to tell Chen.

3       THE COURT:  What about Mr. Kiyonaga's invitation for

4  you to say whether there was or wasn't a grand jury proceeding?

5       MR. GILLIS:  Your Honor, that would be inappropriate.

6       THE COURT:  And tell me why?

7       MR. GILLIS:  Well, Your Honor, I mean, first of all,

8  that would be covered by Rule 6(e).  Also, what, if anything,

9  we were investigating about Ms. Chen or whomever may have been

10  investigating, this doesn't presuppose that Chen was the object

11  of the grand jury's investigation.  Nothing of that kind has

12  been revealed even by Mr. Rhoads.

13       All that Rhoads said to Chen was that he had been

14  subpoenaed before the grand jury.  Whether that furthered --

15  whether that prompted Ms. Chen to do something, whether that

16  was the case, it doesn't say who or what was being

17  investigated.

18       As far as revealing to the -- revealing based upon a

19  motion to reveal what the grand jury -- that basically could be

20  done -- there is no reason why that wouldn't then be done in

21  every single case where that -- where an investigation is

22  closed without, without a -- without any charges being brought.

23  The whole purpose is not to do so.  The whole purpose of the

24  grand jury secrecy rule is prevent exactly that from happening.

25       THE COURT:  Anything else?

1    MR. GILLIS:  No, Your Honor.  To be clear, I don't, I

2    don't support or condone the disclosure of any information

3    regarding an investigation, whether it happens by the FBI

4    director or anyone else.  I don't condone it in any manner

5    whatsoever.

6        So I'm just taking the facts as given and I'm saying

7    that no violation of a Court order took place.  No violation of

8    Rule 6(e) took place.  And there was no disclosure of Rule 6(e)

9    material.

10       THE COURT:  Okay.  Thank you.

11       Mr. Kiyonaga.

12       MR. KIYONAGA:  Briefly, Your Honor.

13       Your Honor, Friday's pleading was produced in a

14   fairly short period of time because I didn't realize until late

15   Wednesday that the affidavit was unsealed and available to be

16   read.

17       But the Privacy Act language speaks for itself,

18   whether or not I cited the right subsection.  And it clearly

19   covers more than somebody's name, date of birth, and Social.

20   Without question it covers photographs of Dr. Chen when she was

21   a young woman and a child and photographs with her family.

22       And I can represent to the Court that there were no

23   copies of those photographs.  They were -- the photographs were

24   in her house.  There were no copies anywhere else.

25       But I would add also that Mr. Rhoads is clearly a de

1    facto agent of the FBI and he should be treated as such for

2    purposes of the Court's analysis.

3           And what the Government is asking you to do is to

4    basically agree that a grand jury is essentially the

5    Government's toy.  That nobody can know about it.

6           Your Honor, the Court well knows that it has the

7    discretion to examine grand jury proceedings.  Under the Bank

8    of Nova Scotia, a Court did dismiss a case if a criminal case

9    has been commenced based on prosecutorial misconduct before a

10   grand jury.

11          So the Government's protestations about the

12   inappropriateness of answering the question as to whether or

13   not a grand jury ever occurred in this case I think rings

14   somewhat hollow.  I don't think, I know.

15          But the grand jury is only one of several causes

16   before the Court.  But 6(e) clearly covers the identity of a

17   witness.  And it covers everything to appear before the grand

18   jury.

19          And under Cudahy, Your Honor, that's a broad ambit.

20   It's the identity.  It's the testimony.  It's essentially the

21   direction the grand jury is taking, what they plan to do.

22   Anything that goes to the substance of the grand jury's

23   considerations.

24          The Government has cited to cases which were much

25   more far-flung and dealt with broader investigations with far

1  more publicity surrounding them.  Whitewater had been

2  investigated by everybody from the Arkansas State Police

3  through the Special Prosecutor.

4       This is a very focussed matter.  The FBI undertook to

5  investigate Dr. Chen five years ago, and we've had two news

6  stories about it.

7       And I should point out, Your Honor, that there is no

8  question but that the search warrant application and the

9  affidavit were under seal at the time of the search.  And yet

10  somehow local and network news were on the scene when the

11  searches were conducted at Dr. Chen's home and at the

12  University of Management and Technology.  I think, once again,

13  somebody within the law enforcement cadre leaked that, leaked

14  that story.

15       But beyond grand jury, Your Honor, we have a

16  violation of the Court's seal or apparent seal.  If the Clerk's

17  Office is telling callers that a matter is being treated under

18  seal, whether or not the Court later decides to unseal it,

19  there was no mention in the docket about a retroactive

20  application for the Court's order of the 25th.

21       A person who decides notwithstanding that posture on

22  the part of this Court to disclose, does so at his or her own

23  risk.  And I would submit that that's a contempt of the Court's

24  authority.

25       THE COURT:  Well, help me understand that.  If, if

1    someone was given a copy of the affidavit and the search

2    warrant and my order saying, these are to be held under seal

3    until a particular date, and the day after that particular date

4    runs by, why aren't -- why isn't that person able to, without

5    any fear of incrimination, disclose the information because the

6    time period that the Court has set for that information to be

7    held under seal has expired?

8            MR. KIYONAGA:  Your Honor, I don't disagree with that

9    formulation, but we don't know that that's what happened here.

10           THE COURT:  Well, no, but I'm just -- the information

11   is the information.  And if it is no longer to be under seal,

12   whether somebody looks at it or not, it still should be public

13   information.

14           MR. KIYONAGA:  Your Honor, with respect, I don't

15   think that's entirely correct.  Whatever the status of that

16   information was at the time of the -- of its release to Fox

17   News --

18           THE COURT:  And that was like in 2017.  So we're

19   talking about four years later, basically, right?

20           MR. KIYONAGA:  Yes, Your Honor.

21           THE COURT:  Almost four years.

22           MR. KIYONAGA:  We don't know whether somebody

23   received that affidavit at the time of the search and a copy of

24   the sealing order and then opted sua sponte to release it after

25   the expiration of the seal.  And that's one of the reasons why

1  I believe -- one reason why I believe a hearing is called for.

2          If somebody called in and said, is case such and such

3  under seal, and is told by the Clerk's Office that it is, and

4  opts to disclose it and put it on the evening news anyway, I

5  would submit that's conduct the Court ought to be concerned

6  about.  We don't know what happened.  I would submit the

7  Government has a good idea.

8          But be that as it may, that is -- the seal is one

9  issue.  The 6(e) is another.  The Privacy Act, this is clearly

10  very personal information.  And it's also the private property

11  of Dr. Chen.  And essentially the Government has converted it

12  by disclosing it without her authority to the media for the

13  entire world to see.

14          So you have -- the Court has a host of grounds for

15  it's intercession here.  And the Court can be much more

16  specific about the ground or grounds, plural, that should

17  attend relief to Dr. Chen.  And the Court would be in a much

18  better position to do that if we heard from the Government

19  exactly how all this came to transpire.  I think a prima facie

20  case has more than been made, and I think it's time to hear

21  from the people on the ground in this process to figure out how

22  this -- how this information went out.

23          I should point out, Your Honor, that this has been

24  extremely damaging to Dr. Chen and her family and everybody

25  around her.  Her university is basically under siege.  All the

1   Government contracts are being reviewed, if not outright

2   pulled.  The military services are telling their students that

3   they need to be cherry of this institution.  And people are

4   afraid to talk to her.  They're afraid to have anything to do

5   with her.

6           And I would submit, Your Honor, that's just not how

7   it's supposed to work.  If the Government wants to investigate

8   somebody and charge them and subject them to the criminal

9   justice process, that's one thing.  But what's happened here is

10  that they investigated.  They decided not to charge.  And

11  somebody or some people within the Government decided they

12  don't like that.  So as a matter of personal preference,

13  they're setting out to ruin her.

14          And the Government is saying, you know, the Court

15  doesn't know if there was a grand jury, so the Court can't do

16  anything about it.  And I would submit the Court ought to be

17  bothered by that response.

18          THE COURT:  Well, thank you.  And I appreciate the

19  pleadings that have been filed and the arguments that we've

20  heard here today.

21          Having reviewed the pleadings and the arguments and

22  the cases cited in the materials that have been submitted,

23  first on the issue of a violation of the Court's order of

24  sealing, I think it's pretty clear what my position is on that

25  already, but let me just explain it a little bit further.

1          My view is that I entered an order back in 2012 that

2    limited the time period in which those materials were to be --

3    remained under seal or considered to be under seal.  And that

4    time period explicitly expired on the date that I set out in my

5    order, and I believe it was March 3, 2013, if I recall that

6    date right.  But it was a date in March of 2013.

7          I don't find that the order that was -- March 4,

8    2013.  I don't find that the order that was -- or the motion

9    and subsequent order that was entered by Judge Hilton in any

10   way changes that.

11         You know, unfortunately, the Court and the Clerk's

12   Office deals with a large number of subpoenas.  Whether in fact

13   this got overlooked in the Clerk's Office is something that,

14   you know, by the terms of my order should have been taken off

15   the sealing list and put on the public record list, you know,

16   probably, yes.

17         And I think we've implemented in the recent -- since

18   the end of 2012 procedures that are in place that help track

19   these things better with electronic filing and some other

20   things.

21         But in fact, you know, my order was specific in that

22   the information that was contained in the application and

23   affidavit and the search warrant itself was not considered to

24   be under the Court's sealing order after March 4, 2013.

25         So I don't find that there is any violation of the

1   sealing order and having the information that was contained in

2   the affidavit in support of the search warrant made public to

3   anyone.

4           The next issue has to do with the motion under 6(e).

5   This one, and as you can probably tell from my questioning, the

6   only issue that I thought came close to that was the

7   information that was provided to Dr. Chen that Rhoads said that

8   he was going to be testifying in front of a grand jury.  I

9   don't find that there is anything else that's contained in the

10  pleadings or the Fox News report or anything else that would --

11  that could even come close to falling under the rule of -- a

12  violation of Rule 6(e).

13          And I think, you know, having heard the argument and

14  reviewing Judge Ellis' decision in United States of America

15  versus Rosen, 471 F.Supp. 2d 651, that even that information in

16  and of itself doesn't rise to a prima facia showing of a 6(e)

17  violation.  You know, it was Rhoads who described the -- who

18  provided that information.  It was information that was

19  provided only at the time to Dr. Chen.

20          The subsequent information that was contained in the

21  affidavit, that is that -- you know, the affidavit outlines

22  that.  Is public information now.  It was contained in the

23  affidavit.

24          So I find that there isn't a violation or there

25  hasn't been a showing of a prima facie violation that would

1  require the Court to have any further proceedings relating to a

2  Rule 6(e) violation.

3        The privacy claim, I'll tell you, I think is not

4  really before the Court at this time.  And I know, Mr.

5  Kiyonaga, you raised this on Friday.  I don't think the

6  Government has had a full and fair opportunity to address that

7  in the hearing today.  And, honestly, I haven't really had a

8  full opportunity to review what it may be that you're claiming

9  was a Privacy Act violation.

10        So I'm not going to rule on that issue.  I'm not

11  finding that that is properly before the Court on the motion

12  that I set for a hearing back when we -- I entered my order

13  back on March 27, that that was not an issue that was before

14  the Court at the time.

15        If you want to, given what I have said here today,

16  consider pursuing some sort of Privacy Act issue, you can do

17  so, but it's going to have to be done in a new motion, be

18  considered as a separate motion to be briefed and, if

19  necessary, argued at a later time.

20        Any questions from the parties about my ruling this

21  morning?  Mr. Gillis?

22        MR. GILLIS:  Nothing from the Government, Your Honor.

23        THE COURT:  Mr. Kiyonaga.

24        MR. KIYONAGA:  Your Honor, would the Court indulge me

25  one moment?

1          THE COURT:  Sure.

2          MR. KIYONAGA:  Your Honor, the Court has not ruled on

3     my motion insofar as Dr. Chen has sought relief for a violation

4     of the Court's authority to order a search.

5          I think the preponderance of the evidence or

6     indicators before the Court is that the Fox News items included

7     private property of Dr. Chen that was seized from her house.

8          And as I pointed out in my first pleading, the

9     Court's function in reviewing an application for a search

10    warrant is to safeguard the privacy rights of the person or

11    entity being searched.

12         As a corollary of that, the Court has the authority

13    to assure that the fruits of the search are treated

14    responsibly.

15         Furthermore, Rule 41(g) vests with the court the

16    ultimate legal custody or responsibility for items, for

17    property seized in a search.  And clearly in this case property

18    seized in a search was disclosed to Fox News without any manner

19    of authority from Dr. Chen.

20         So I would submit that that basis is also before the

21    Court.

22         THE COURT:  Well, I don't think that you have clearly

23    established that that was the only avenue that those

24    photographs could have gotten to Fox News.

25         MR. KIYONAGA:  Your Honor, my understanding is that

1 there were no copies.  That these were original photographs --

2        THE COURT:  Well, you know, that's argument, Mr.

3 Kiyonaga.  There is nothing in the record that I have in front

4 of me that establishes that those photographs were not

5 available to anyone other than the Government after that search

6 warrant.

7        MR. KIYONAGA:  Your Honor, the Government conceded,

8 if I understood MR. Gillis correctly, that the photos were

9 seized in a search.

10        THE COURT:  That's right, but they could have been

11 displayed in her office.  They could have been posted on the

12 Internet.  They could have been available in many other sources

13 other than from the Government.

14        And just hear me out.  You know, I'm dealing with the

15 motion on the record that is in front of me.  And you

16 submitted, you know, materials for me to consider, and I've

17 considered those.  But I don't have anything in the record that

18 says these -- and we'll talk about the two photographs of Dr.

19 Chen and her husband with the uniform, and Dr. Chen as a

20 younger woman in her uniform.  We don't have anything that

21 says, those photographs were never disclosed to the public by

22 Dr. Chen or her husband, or displayed in public by Dr. Chen or

23 her husband.

24        MR. KIYONAGA:  Very well, Your Honor.

25        THE COURT:  There is -- there is the, in your motion

1  on Friday, some description about some other photographs that

2  were in an envelope that were apparently not ever made public.

3  But there is no such statement as to the other photographs.

4          MR. KIYONAGA:  Your Honor, just to be clear, I

5  believe there were more than two published photos that were

6  seized in the search.  There were the -- there was the photo

7  with Dr. Chen with her husband --

8          THE COURT:  I'm talking about in the first Fox

9  report, there were the two photographs that you've highlighted

10 in your materials.

11         MR. KIYONAGA:  Correct, sir.

12         THE COURT:  One was the one with her in the uniform

13 and her husband jokingly saluting her as she was holding up the

14 uniform in front of her.

15         And the other I think was her wearing a uniform at an

16 earlier time; is that correct?

17         MR. KIYONAGA:  Correct.  And I think other

18 photographs from the search were publicized in the second

19 piece.

20         I would ask the Court to hold your ruling as to that

21 ground for relief in abeyance so that I can further plead the

22 issue.

23         THE COURT:  Well, I'm going to decide it on the

24 motion that's in front of me.  And if you want to have me --

25 you know, if you want to -- you've had an opportunity to raise

1  these issues.  I mean, you filed this motion back in -- you

2  know, the first one you filed back in February.  The second one

3  you filed on March 10.  So I mean, we're talking about two

4  months since you filed that most recent motion to show --

5  March, April, May, yeah, almost two months since you filed the

6  motion to show cause why sanctions should not issue.

7          The Government responded on March 24.

8          You know, I'm -- and your reply then was filed I

9  guess back on April 7.

10          I mean, the record on that motion is complete.  You

11  know, I don't see why I should be taking anything -- not

12  deciding the motion that is in front of me because you didn't

13  submit sufficient information for me to consider here today.

14          MR. KIYONAGA:  Very well, Your Honor.  It's my

15  understanding, you're not deciding the issue as to that

16  specific ground of relief, and Dr. Chen will have the issue --

17  the option of briefing it and providing the Court with an

18  enhanced record that would better enable the Court to address

19  that issue.  And I will attend to that.

20          THE COURT:  All right.

21          MR. KIYONAGA:  Thank you, sir.

22          THE COURT:  We'll see what may happen.  Thank you.

23          All right.  So, and again, just to clarify, this is

24  not under seal.  This transcript of this proceeding is not

25  under seal.  Any further pleadings, unless specifically filed

1   along with a motion to seal, will be in the public record.  So

2   the entire file in both of these matters will be unsealed.

3   Okay?

4          MR. KIYONAGA:  Very well, Your Honor.  Thank you.

5          THE COURT:  Thank you.

6          MR. KIYONAGA:  Thank you.

7          THE COURT:  Thank you.  Court will be adjourned.

8          NOTE:  The hearing concluded at 10:58 a.m.

9   ------------------------------------------------

10

11      C E R T I F I C A T E  of  T R A N S C R I P T I O N

12

13      I hereby certify that the foregoing is a true and
    accurate transcript that was typed by me from the recording

14  provided by the court.  Any errors or omissions are due to the

15  inability of the undersigned to hear or understand said

16  recording.

17

18      Further, that I am neither counsel for, related to,

19  nor employed by any of the parties to the above-styled action,

20  and that I am not financially or otherwise interested in the

21  outcome of the above-styled action.

22

23

24                      /s/ Norman B. Linnell
                        Norman B. Linnell
25                      Court Reporter - USDC/EDVA