IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| IN RE SEARCH OF: | ) | No. 1:12sw1002 |
| | ) | |
| 2122 21ST ROAD NORTH | ) | |
| ARLINGTON, VIRGINIA | ) | |

| | | |
|---|---|---|
| IN RE SEARCH OF: | ) | No. 1:12sw1003 |
| | ) | |
| UNIVERSITY OF MANAGEMENT | ) | |
| AND TECHNOLOGY | ) | |
| | ) | |

GOVERNMENT'S RESPONSE TO
SECOND MOTION TO SHOW CAUSE

INTRODUCTION

On May 22, 2017, Yanping Chen filed a second motion to show cause[1] relating to the government's alleged disclosure of photographs that were seized during a search of Chen's residence. Chen's second motion is based upon an alleged violation of the Privacy Act, 5 U.S.C. § 552. Chen's argument on this point consists of two short paragraphs, and it neither attempts to establish that evidence obtained during a lawful search falls within the scope of the Privacy Act, nor does it address the many exceptions that are applicable to the provisions of the Act even if evidence from a search would otherwise be within its scope. As discussed below, this Court lacks jurisdiction to consider Chen's motion. For this and the other reasons that follow, Chen's second motion to show cause should be denied.

[1] Chen's pleading is styled as a "second addendum" to her original motion to show cause. As the Court made clear at the hearing, however, the Court's ruling denying the motion fully disposed of all issues that it raised. This "addendum" should therefore be treated as if it were filed as a second motion.

## ARGUMENT

### I. THIS COURT DOES NOT HAVE JURISDICTION TO ENTERTAIN THE DEFENDANT'S MOTION.

To the extent that the Privacy Act provides any remedy for the alleged violations claimed by Chen, the Act limits the remedy of any claimant to a civil action and expressly provides that "the district courts of the United States shall have jurisdiction in the matter[]." 5 U.S.C. § 552a(g)(1). *See also Id.*, § 552a(g)(5) ("An action to enforce any liability created under this section may be brought in the district court of the United States . . . ."). Because this Court does not have jurisdiction to hear the matter, Chen's second motion to show cause should be denied.

### II. EVIDENCE COLLECTED DURING THE EXECUTION OF A SEARCH WARRANT DOES NOT CONSTITUTE A "SYSTEM OF RECORDS" WITHIN THE MEANING OF THE PRIVACY ACT.

Chen has made no effort to show that the photographs in question, or that evidence gathered in a search in general, are maintained as part of a "system of records" within the meaning of 5 U.S.C. § 552a(5), which provides:

> [T]he term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

*Id.*

Certainly the FBI keeps meticulous track of the locations from which evidence is seized during a search, and it keeps scrupulous records necessary to establish the chain of custody of any evidence seized. The evidence seized from the premises to be searched would be placed in an evidence bag, and a record would be kept of precisely where on the premises the items in the evidence bag were found. Presumably, however, a description of each and every item seized from the premises would not be routinely created and maintained in connection with each and every search that the FBI conducts. Presumably, as the evidence from a search is reviewed by

the agents and the prosecutors, relevant items would be noted for particular attention. The relevance of the items would depend, of course, upon the nature of each individual investigation. The evidence collected during a search therefore might or might not identify a given evidence bag or other container as being associated with a particular individual. Presumably, this would be even less the case with the individual items contained within the evidence bag. In an immigration fraud case, for example, a number of fraudulent passports might be found in the drawer of a bedside table in a residence, seized, and placed in an evidence bag. The evidence bag would of course note the precise location from which the passports were seized and would presumably bear a general description of the items in the bag. It might well be the case, however, that the individual names on the passports – fictitious or otherwise – would not be maintained in some searchable database of the FBI. The same could be said of evidence seized during the search of a university suspected of misappropriating and inappropriately disclosing personal and professional information collected from military personnel who took classes from the university. It might well be the case that the seizure of the computers of the university might capture the names and other information of thousands of military personnel, but whether the individual names could be found in FBI databases is another question entirely.[2]

Chen has failed to show that evidence seized during a search conducted in a criminal investigation constitutes records that are "contained in a system of records." 5 U.S.C. § 552a(b). She has failed to show that such records are "retriev[able] by the name of the individual or by

[2] When a "forensic image" of a computer is made during a search, it is not produce a "human readable" format. For agents and prosecutors to examine the electronic evidence, it first must be rendered intelligible by using a separate program, such as Forensic Toolkit. As this is done for the particular needs of a given investigation, presumably the "human readable" result would not become part of a larger, general FBI database.

some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a5).  It does not matter whether the evidence seized during a search in this particular investigation might be associated with Chen's name.  We are talking here about a "*system* of records," not individual instances where a particular government record might be associated with a particular individual.  In the hypothetical investigations discussed above, the names of the persons on the fraudulent passports or the names of the military personnel in the electronic evidence would presumably not be "retriev[able]" by their names, while the name of the subject of the investigation presumably would be associated with the evidence.  The very same evidence, however, cannot be a "system of records" for the subject and *not* a "system of records" for those appearing on the passports or in the electronic evidence.  It either is a "system" or it is not.  The entire structure of the Privacy Act does not permit an interpretation in which a collection of evidence is and at the same time is not a "system of records," depending upon who is asking about them.

     Similarly, the strictures of the Privacy Act cannot logically apply to evidence seized during a search.  By its terms, the Act provides:

> No agency shall disclose any record which is contained in a system of records . . . to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . to another agency . . . of the United States for a . . . criminal law enforcement activity if the activity is authorized by law, and if *the head of the agency . . . has made a written request* to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought.

5 U.S.C. § 552a(b)(7) (emphasis added).  It would be absurd to interpret the Privacy Act to require the FBI to obtain the written consent of the subject of an investigation before it could

share evidence from a search with the DEA or ATF unless the Administrator or Director specifically asked for it in writing with the particularity demanded by this provision.

Application of the requirements of the Act to evidence from search warrants would be similarly illogical. For example, the Act provides:

> Each agency that maintains a system of records shall . . . collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs [and] inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual . . . the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary; . . . the principal purpose or purposes for which the information is intended to be used; . . . the routine uses which may be made of the information . . . ; [and] the effects on him, if any, of not providing all or any part of the requested information.

*Id*., § 552a(e)(2) & (3). Again, it would be foolish to require the FBI to consider, before executing a search warrant, whether it could simply "collect [the] information to the greatest extent practicable directly from the subject" and then to present the subject with a form stating, among other things, "the principal purpose or purposes for which the information is intended to be used."

Another example is found in section 552a(d):

> Each agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof . . . ; permit the individual to request amendment of a record pertaining to him and . . . not later than 10 days . . . after the date of receipt of such request . . . promptly either . . . make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or . . . inform the individual of its refusal to amend the record . . . , the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official.

5 U.S.C. § 552a(d)(1) & (2) (internal punctuation omitted). Each agency that maintains a system of records must also:

> permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days . . . from the date on which the individual requests such review, complete such review and make a final determination . . . and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination . . . .

*Id.*, § 552a(d)(3) (internal punctuation omitted). It is beyond imagination that Congress intended that in the context of a search warrant obtained in a criminal investigation, a subject of the investigation would be permitted "to gain access to his record *or to any information pertaining to him which is contained in the system*, [and] permit him . . . to review the record and have a copy made of all or any portion thereof." *Id.*, § 552a(d)(1) (emphasis added). It is similarly unimaginable that Congress intended for this elaborate review process to apply to evidence obtained during the execution of a search.

Finally, Chen's reliance upon *Gerlich v. U.S. Dept. of Justice*, 711 F.3d 161 (D.C. Cir. 2013) overlooks the fact that the provision of the Privacy Act involved in that case was subsection (e)(5), which has to do with the manner in which an agency's records are to be maintained. *Gerlich*, 711 F.3d at 169. To the extent that Chen has articulated the basis for her Privacy Act argument, it appears to be premised upon the disclosure of certain records, which, if viable at all, would fall under subsection (b), which expressly applies only to a "record which is contained in a system of records." 5 U.S.C. § 552a(b).

As the movant, Chen has the burden of establishing that the photographs seized during the search of her residence are "record[s] . . . contained in a system of records" within the

meaning of 5 U.S.C. § 552a(b). This she has failed to do, and accordingly, Chen's second motion to show cause should be denied.

III. CHEN HAS OFFERED NO EVIDENCE TO SUGGEST THAT STEPHEN RHOADS WAS AN AGENT OF THE FBI.

Nothing in Chen's motion establishes that Stephen Rhoads was a "*de facto* 'agent' of the FBI," as she claims. The only case relied upon by Chen is *Schmitt v. True*, 387 F. Supp.2d 622 (E.D. Va. 2005), which, in a Sixth Amendment context, stated that "agency is created by the agreement to act on behalf of the state and pursuant to its instructions." *Id*. at 646. But there is nothing in the record (or anywhere else) to suggest that whatever may have been discussed with or disclosed to the media by Mr. Rhoads was done "on behalf of the [FBI] and pursuant to its instructions." Moreover, as the court in *Schmitt* made clear, the question of whether an individual is an agent of the government rests upon "long-standing, general principles of agency law." *Id*. These principles make clear that any putative agency relationship between the government and Mr. Rhoads – if there ever were one – ended long before any communications he may have had with the media.

The Restatement (Third) of Agency provides that "[a]n agent's actual authority terminates . . . upon the occurrence of circumstances on the basis of which the agent should reasonably conclude that the principal no longer would assent to the agent's taking action on the principal's behalf." RESTATEMENT (THIRD) OF AGENCY § 3.09 (2006). Further, an agent's apparent authority "ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority." *Id*. § 311. Nothing in Chen's motion contains any basis to conclude that, more than four years after the execution of the search of Chen's residence, the circumstances could have led Mr. Rhoads to conclude that –

if it ever did – the FBI would assent to his taking action on its behalf.  For similar reason, under no circumstance would it be reasonable for a third party to conclude that Mr. Rhoads acted with the actual authority of the FBI.

Accordingly, to the extent that Chen's motion is based upon the actions of Stephen Rhoads, her motion fails.

## CONCLUSION

Because this Court lacks jurisdiction to entertain Chen's Privacy Act claim, and because her second motion is otherwise meritless, the United States respectfully requests that Chen's second motion to show cause be denied without a hearing.

        Respectfully submitted,

        DANA J. BOENTE
        UNITED STATES ATTORNEY

By:        /s/
     James P. Gillis
     Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that on June 5, 2017, I filed the foregoing using the ECF system, which will send a copy to defense counsel of record:

John C. Kiyonaga
600 Cameron Street
Alexandria, VA 22314
john@johnckiyonaga.com

/s/
James P. Gillis
Assistant United States Attorney